IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | JURY TRIAL DEMANDED |
| THE KING'S WAY BAPTIST CHURCH, INC., | : | |
| | : | |
| Defendant. | : | |
| | : | |

## **COMPLAINT**

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") as amended, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of retaliation and to provide appropriate relief to Marsha Pearson ("Pearson"), who was adversely affected by such practices. The Plaintiff alleges that Defendant, The King's Way Baptist Church, Inc. ("Defendant"), subjected Pearson to unlawful retaliation in violation of Title VII when it discharged her for complaining of sexual harassment or otherwise engaging in protected activity.

## JURISDICTION AND VENUE

1.

Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343, and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(f)(1) and (3) and 2000e-6 ("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.

The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Georgia, Atlanta Division.

## PARTIES

3.

Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.

At all relevant times, Defendant has continuously been a corporation doing business in the state of Georgia and the city of Douglasville, and has continuously had at least 15 employees.

5.

At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. § 2000e(b), (g) and (h).

**STATEMENT OF CLAIMS**

6.

More than thirty days prior to the institution of this lawsuit, Pearson filed a charge of discrimination with the Commission alleging violations of Title VII by Defendant.

7.

On June 25, 2015, the Commission issued to Defendant a Letter of Determination finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.

On July 10, 2015, Defendant advised the Commission that it was not interested in engaging in the conciliation process regarding the reasonable cause finding.

9.

On August 13, 2015, the Commission issued to Defendant a Notice of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

10.

All conditions precedent to the initiation of this lawsuit have been fulfilled.

11.

Defendant has engaged in unlawful employment practices in Douglasville, Georgia in violation of Sections 703(a) and 704(a) of Title VII, 42 U.S.C. §§ 2000e-2(a) and 2000e-3 by retaliating against Pearson when she complained of the sexual harassment by, *inter alia*, terminating her employment.

12.

Defendant is a Baptist Church that also runs a Christian school called The King's Way Christian School ("KWCS").

13.

From the mid-1990s until October 2013, William M. Wininger ("Wininger") was the Pastor at Defendant. During the relevant time period, Wininger was also the Chief Executive Officer of Defendant and KWCS's School Superintendent. As Pastor, CEO, and School Superintendent, Wininger was the highest management official at Defendant.

14.

Pearson began working for King's Way as a Kindergarten teacher in August 2007. Pearson has sons who attended KWCS while she taught there.

15.

Although she taught at a Christian school, Pearson's job with Defendant as a Kindergarten teacher did not require her to engage in any ministerial duties, she was not asked to be a minister, and, in fact, Defendant explicitly prohibited women from being ministers.

16.

In the fall 2010, Wininger started coming to Pearson's classroom on a weekly basis. When he came to her classroom, he often put his hand on Pearson's back and rubbed her back. Such conduct was done without Pearson's permission and was unwelcome.

17.

In the fall 2011, Pearson moved to a new classroom and Wininger started coming to see her more often. Wininger continued to rub Pearson's back when he visited, sometimes tracing her bra strap with his finger. Such conduct was done without Pearson's permission and was unwelcome.

18.

About mid-way through the 2011-2012 school year, Wininger started, without Pearson's permission, hugging Pearson tightly with his arms while pressing his body against hers. During this school year, Wininger visited Pearson's classroom one to two times per week and, during the majority of such visits, would manage to touch or hug Pearson. Such conduct was done without Pearson's permission and was unwelcome.

19.

During the 2012-2013 school year, Pearson changed classrooms again. The new classroom did not have any windows. Wininger started coming to Pearson's classroom more often than in previous years.

20.

The first time Wininger came into Pearson's classroom during the 2012-2013 school year, without Pearson's permission, he gave her a hug, put his mouth near Pearson's ear and tried to kissed it. Such conduct was unwelcome.

21.

During the 2012-2013 school year, Wininger attempted to kiss Pearson at least three times, once on the mouth, and continually hugged her and tried to press himself into her body. He also rubbed his penis against her and pressed it into her thigh. In addition, on one occasion while hugging Pearson he slid his hand down her back and rubbed her buttocks. Wininger also attempted to put his hand up Pearson's shirt on a number of occasions. Such conduct was done without Pearson's permission and was unwelcome.

22.

One of Pearson's employment benefits as a teacher was that her children could attend KWCS for free. Wininger's unwelcome sexual advances were often accompanied by veiled threats to Pearson that if she reported the conduct, her children would be removed from the school. Thus, Wininger on various occasions made comments such as: "This is between us, right?" You love your boys, right?" You want them to stay in this school, right?" Pearson understood the last comment to mean that if she told anyone about the sexual harassment, her employment would be terminated and her children would no longer be allowed to attend KWCS.

23.

At no time did Pearson welcome Wininger's sexually harassing conduct, and she consistently refused and rejected it. On many occasions when Wininger would hug Pearson, she would push him away or attempt to do so.

24.

In October 2013, Pearson reported Wininger's conduct to Joseph Hayman, Defendant's Associate Pastor, Jeremey Wilson, head of King's Way Deaf Ministry, and Ray Conway, the School Administrator at KWCS.

25.

During Pearson's verbal complaint to Hayman about Wininger's sexual harassment, Hayman asked Pearson who she had talked to about Wininger's conduct. Pearson told him she reported Wininger to the Douglas County Sheriff's Department. Hayman told her not to talk to anyone except her husband.

26.

On or about November 15, 2013, Hayman and Conway met with Pearson again, and told her she was being discharged because she allowed the sexual harassment to occur. Such conduct constituted unlawful retaliation for Pearson's complaint of sexual harassment and/or her lawful opposition to such conduct.

27.

The effect of the practice(s) complained of in paragraphs 16 through 26 above has been to deprive Pearson of equal employment opportunities and, otherwise,

adversely affected her status as an employee because she engaged in protected activities.

28.

The unlawful employment practices complained of in paragraphs 16 through 26 above were intentional.

29.

The unlawful employment practices complained of in paragraphs 16 through 26 above were done with malice or with reckless indifference to the federally protected rights of Pearson.

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that this Court:

A.    Grant a permanent injunction enjoining Defendant, its officers, successors, religious leaders, school administration, assigns and all other persons in active concert or participation with them, from engaging in retaliation against its employees, and engaging in any other employment practice that retaliates against employees who engage in protected activity.

B.    Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for female employees, and which eradicate the effects of its past and present unlawful employment practices.

C.    Order Defendants to make Pearson whole by providing appropriate back pay with pre-judgment interest, in amounts to be determined at trial, front pay and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.    Order Defendants to make Pearson whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 16 through 26, above, in amounts to be determined at trial.

E.    Order Defendants to make Pearson whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described in paragraphs 16 through 26, above, including emotional pain and suffering, loss of enjoyment of life, inconvenience, anxiety, stress, and humiliation, in amounts to be determined at trial.

F.    Order Defendant to pay punitive damages to Pearson for Defendant's malicious and/or reckless conduct described in paragraphs 16 through 26, above, in amounts to be determined at trial.

G.    Grant such further relief as the Court deems necessary and proper in the public interest.

H.    Award the Commission its costs in this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Respectfully submitted,

P. DAVID LOPEZ
General Counsel

JAMES L. LEE
Deputy General Counsel

GWENDOLYN YOUNG REAMS
Associate General Counsel

October 30, 2015
            Date

*s/*Robert K. Dawkins
Robert K. Dawkins
Regional Attorney
Georgia Bar No.: 076206
robert.dawkins@eeoc.gov

Steven A. Wagner
Senior Trial Attorney
Georgia Bar No. 000529
steven.wagner@eeoc.gov

Ottrell F. Edwards
Supervisory Trial Attorney
Georgia Bar No. 141979
ottrell.edwards@eeoc.gov

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
(404) 562-6818     (direct)
(404) 562-6905     (facsimile)